(12 Misc. Rep. 536.)

## EARLE v. ROBINSON et al.

(Supreme Court, Special Term, New York County. May, 1895.)

CONDITIONAL SALE—DEFAULT TO FILE—OPTION OF SELLER.

Where the buyer of goods under a conditional sale gives notes for the price, and is put in possession, the title to pass when the notes are paid, the seller has the option, on default of payment of the notes, to sue the buyer thereon for the contract price, or to retake the goods, and sue for breach of contract; and by retaking the goods he exercises his option, and the notes and the mortgage given to secure them are canceled.

Action by Lillie J. Earle against George H. Robinson and others. Judgment for plaintiff.

A. J. Dittenhoefer, David Gerber, and I. M. Dittenhoefer, for plaintiff.

George M. Pinney, Jr., for defendants.

INGRAHAM, J. The one question that I have to determine is whether the defendant Robinson, as trustee, has now the right to enforce the chattel mortgage described in the complaint. It is conceded by the plaintiff that that chattel mortgage is valid to secure the payment of the notes to the Gorham Manufacturing Company, but, as there has been no default in the payment of any of those notes, Robinson, as trustee for the Gorham Manufacturing Company, is not entitled to enforce this mortgage. The mortgage is also given to secure certain notes made by the mortgagor to the Phoenix Furniture Company and to W. & J. Sloane. It is conceded that those notes have not been paid, and that some of them are past due. The only question is whether or not those notes are existing obligations of the mortgagor, that the mortgagees are entitled to enforce against him, and so against the mortgaged property.

The original transaction, as between the mortgagor and the Phoenix Furniture Company, was an executory contract for the sale of certain furniture to the mortgagor, who was about to open an hotel in the city of New York. By that contract, dated the 1st of

June, 1893, the Phoenix Furniture Company, in consideration of the sum of $180,922.56, agreed to sell and deliver to Earle, the mortgagor, certain goods and chattels; and Earle agreed to purchase from said Phoenix Furniture Company said goods and chattels, and to pay to them the said sum in four payments, the first one of which was due a year from the date of the agreement. The agreement then provided that the said goods were in the hotel kept by the mortgagor, and were to be kept by him in said hotel, "upon the distinct understanding and agreement that the title to the same does not pass to him, but remains, and shall remain, in the said party of the first part [Phoenix Furniture Company] until said party of the second part [Earle] shall have fully paid the aforesaid installment payments;    *    *    *    and in case of default in the payment of the same, or any part thereof, as the same shall become due, the said party of the first part may take all of the said property into its own possession, and remove it from the building. And inasmuch as said property cannot be resold as new furniture, if taken by the party of the first part under and in pursuance of this clause of this contract, and will have been depreciated by use, the party of the second part hereby agrees, for the purpose of compensating the party of the first part in such an event, that all payments made on the contract prior to the time the property is so taken may be retained by the party of the first part." As to the goods sold by the defendants W. & J. Sloane, they were billed to Earle; he giving notes to the order of W. & J. Sloane, the first note being due December 1, 1893, and at the same time signing the following statement: "It is hereby agreed that these goods described as above are the property of, and belong to, W. & J. Sloane, until paid for in full. Ferdinand P. Earle." One of the notes to the Sloanes being due on the 1st day of December, 1893, and one to the Gorham Manufacturing Company being also due upon the same day, Earle was unable to pay them. There was nothing due, however, at this time, to the Phoenix Company; their first payment coming due on the 1st day of June, 1894. Earle, however, being unable to pay the notes to Sloane and the Gorham Manufacturing Company, made an agreement under which the chattel mortgage in suit was given, that agreement being recited in full in the said chattel mortgage. That chattel mortgage is dated January 2, 1894, and recites the indebtedness of Earle to the Gorham Manufacturing Company, to W. & J. Sloane, and to the Phoenix Furniture Company; also recites a proposition to his three creditors, asking for an extension of the time of payment of his indebtedness to them, an acceptance by the creditors of the proposition, a statement of the ownership of the lease of Hotel Normandie, and of the furniture and fixtures therein; and then provided that the said Earle, for "better and further securing the payment of said sums of money owing by him to the said corporations and each of them, evidenced by said promissory notes mentioned and described in said 'Schedule A,' hereto annexed, and in consideration of the extension of time of payment given to him by said corporations, and each of them,    *    *    *    hath bargained and sold, and by these presents

doth grant, bargain, and sell, unto the party of the second part, all and singular, the household or hotel goods," etc., in the Hotel Normandie, together with the lease, etc., "to have and to hold the same unto the said party of the second part, for the better and further securing the payment of said sums of money evidenced by said promissory notes, owing by the party of the first part to said corporations, and each of them." The said mortgage also contained provisions for the selling of the mortgaged property by private sale; that the mortgage should be void in case of the payment of the notes; and that until default was made in the payment of said promissory notes, or any of them, the party of the first part is to remain and continue in the quiet and peaceable possession of the said goods and chattels, and the full and free enjoyment of the same. The interest of Earle, the mortgagor, in the mortgaged property, subsequently became vested in the plaintiff, subject to the mortgage.

If these notes of Earle are valid and subsisting claims against him, then it is clear that Robinson has a right to enforce this mortgage. If, however, they are not subsisting claims against Earle, then it is also clear that Robinson has no right to enforce the mortgage. Generally speaking, whatever extinguishes the mortgage debt extinguishes the mortgage. Hence the payment and acceptance of the amount secured by the chattel mortgage, whether before or after breach of condition, discharges the lien of the mortgage, and a mortgage given by a principal debtor to his sureties to protect them against their suretyship is discharged by the creditors discharging the sureties. See 3 Am. & Eng. Enc. Law, p. 201. See, also, Charter v. Stevens, 3 Denio, 35, where it was held that where default had been made in the payment of a chattel mortgage, and the mortgagee entered into possession, and proceeded to sell, under the authority contained in the mortgage, as soon as he had sold enough property to satisfy the amount due and unpaid, the end and object of the mortgage had thus been fully attained, and the mortgagee had no longer any right to the property which remained unsold, or to sell it under the mortgage. If, therefore, the action of the creditors to secure whose debts this mortgage was given released Earle from the obligation to pay the notes held by them, the mortgage was discharged, and could not be enforced to pay the notes. This must depend upon just what relation existed between the Phoenix Company, Sloane, and Earle at the time the mortgage was given, and the subsequent acts of the creditors after a default in the payment of the note to secure which the mortgage was given. Earle had agreed to purchase the property. The contract was not in praesenti, but was executory. He gave his notes for the amount of money that he had agreed to pay for the property, payable at a future date. The consideration for these notes was the agreement of the vendors to vest the title of the property in Earle upon the payment of the contract price, and undoubtedly created an existing obligation on the part of Earle to pay them the amount he had agreed to pay at the time fixed for payment, as the consideration for the property. At the same time the vendors had delivered the possession of the

property that they had agreed to sell, and Earle had agreed to pur-
chase, to Earle, but accompanying that delivery there was an express
agreement between the parties that the title should not pass to Earle
until the consideration was paid.   Earle had the possession of the
property; he had agreed to purchase it; but the title still remained
in the vendor, and it was not to be divested until Earle had paid the
purchase price.   In an executory contract of sale the right of the
vendor to sue for the price agreed to be paid for the goods appears
to depend upon the vesting of the title to the goods in the vendee.
It is stated in Benjamin on Sales (section 758):

"When the vendor has not transferred to the buyer the property in the
goods which are the subject of the contract, as has been explained in Book
2, as where the agreement is for the sale of goods not specific, or of
specific goods which are not in a deliverable state, or which are to be
weighed or measured before delivery, the breach by the buyer of his promise
to accept and pay can only affect the vendor by way of damages. The goods
are still his. He may resell, or not, at his pleasure. But his only action
against the buyer is for damages for nonacceptance. He can, in general,
only recover the damage that he has sustained, not the full price of the
goods. The law, with the reason for it, was thus stated by Tindal, C. J.,
in delivering the opinion of the exchequer chamber in Barrow v. Arnaud:
'Where a contract to deliver goods at a certain price is broken, the proper
measure of damages, in general, is the difference between the contract price
and the market price of such goods at the time when the contract is broken,
because the purchaser, having the money in his hands, may go into the
market and buy. So, if a contract to accept and pay for goods is broken,
the same rule may be properly applied, for the seller may take his goods
into the market, and obtain the current price for them.'"

But the parties may agree that the money shall be paid before the
title to the goods passes, in which case the vendee may maintain the
action without delivery of the goods.   In section 762 the learned au-
thor says:

"Although, in general, the vendor's recovery in damages is limited to the
difference between the price fixed in the contract and the market value on
the day appointed for delivery,—according to the rule as stated by Parke,
B., in Laird v. Pim, that 'a party cannot recover the full value of a chattel,
unless under circumstances which import that the property has passed to
the defendant, as in the case of goods sold and delivered, where they have
been absolutely parted with, and cannot be sold again,'—there may be special
terms agreed on, in conflict with this rule. A vendor may well say to a
buyer, 'I want the money on such a day, and I will not sell unless you
agree to give me the money on that day, whether you are ready, or not, to
accept the goods;' and, if these terms be accepted, the vendor may recover
the whole price of goods the property of which remains vested in himself.
In such a case the buyer would be driven to his cross action if the vendor,
after receiving the price, should refuse delivery of the goods."

In this case the parties did agree that part of the consideration
should be paid before the title passed, as the title was not to vest
in Earle until he paid the full consideration; but still, in order to
entitle the vendor to sue for and recover the consideration to be paid
for the goods sold, they must do no act that would prevent their
compliance with their contract, viz. to vest the title of the goods in
Earle upon his payment of the purchase price.   Their right to re-
cover any damages sustained by reason of a breach of the contract
by Earle was not affected by a disposition of the property before the
commencement of such a suit.   It was only the right to recover un-

der the contract, and not for a breach of the contract. Therefore I do not think the rights of the parties were changed by the delivery of the property sold to Earle. Earle's obligation to the defendants was not different from what it would have been had the vendors retained possession of the property, and held it until Earle paid these notes. In either case the vendor would have owned the property, Earle having an executory agreement by which he was to become the owner upon payment of his notes. When those notes became due, the vendors had the same right that any vendor has, who has agreed to sell property to a vendee, where the vendee refuses to accept or pay for it. Upon refusal of the vendee to accept, and pay the contract price, the vendor may sue for the difference between the contract price and the actual value of the property, in which case he elects to retain the property as his own, or he may tender the goods sold, and then recover the contract price, in which case he holds the property as trustee for the vendee, and is bound to deliver it whenever demanded, upon receiving payment of the contract price; but in this latter case the vendor's right to sue depended upon the tender to the vendee, having vested the title in the vendee. See Hayden v. Demets, 53 N. Y. 430. See, also, Van Brocklen v. Smeallie, 140 N. Y. 75, 35 N. E. 415. It seems to me that it is this position in which the creditors were placed when Earle defaulted in the payment of his notes. They could tender the property to Earle, and, holding it as trustee for him, sue him on his notes that he had given, or they could elect to hold it as their own, and sue for damages for his breach of the contract, either first selling it, and holding him for the balance, or taking the property as their own, and recovering from him the difference between the contract price and its value. They did not have, however, both remedies. They could not sue for the contract price, and at the same time sell the property, or treat it as their own. And Earle's liability upon the notes that he had given as the consideration that he was to pay for the property depended upon whether or not the creditors elected to hold Earle liable on the notes for the contract price, holding the property for him, or to hold him liable for the damages that they sustained by his breach of the contract. The agreement gave the vendors no right to sell, and apply the proceeds upon Earle's notes, Earle to be liable for any deficiency; and it cannot be said that the vendors had a lien upon the goods, for, by the express terms of the contract, they were the owners. They had relinquished the possession so long as Earle was not in default, but that did not affect the title. Thus, by the contract, the title never vested in Earle, but remained in the vendors. The only consideration for the notes, therefore, was the vendors' promise to vest the title of the property in Earle upon his payment of the notes, and the agreement that Earle should have the possession of the property, and be entitled to its use, during the time for which credit was given. Upon his default in the payment of the notes, that right of possession ended; and the vendors were entitled to retake possession from Earle, and that right they exercised. The position, then, was the same as if they had retained the possession, and Earle

had agreed to pay to them, at a certain time, the purchase price, and, upon that payment, be entitled to the possession and title to the property. And then it was that the vendors were put to their election as to the remedy which they would adopt. Both the furniture company and W. & J. Sloane made their election as to which position they would take. Immediately after the failure of Earle to pay these notes, on April 6, 1894, a letter was written by both the Phoenix Company and the Sloanes, by which they notified Earle that, in consequence of his failure to pay the note due April 5th, they had taken possession of the property conditionally sold and delivered to him, and which had been left by him in the Hotel New Netherlands, and continuing, "We further notify you that we shall, in due course, and within the time allowed by law, sell all of said property so retaken by us for the best price we can obtain, and give you credit for the proceeds of such sale." And they followed this notice up by a sale of the property covered by the contract between these vendors and Earle to a third party, without notice to Earle, by a bill of sale which covenanted that the vendors "were the sole and exclusive owners thereof, free from any demand or claim on the part of any person or persons whomsoever, and that neither the said Ferdinand P. Earle, or any person, has any interest in said furniture," and with a warranty of title; thus putting it out of their power to comply with the contract and give Earle title to the property, the title to which was the only consideration for the notes to secure which the mortgage was given. It seems to me clear that this is inconsistent with any claim against Earle upon the notes, and at once released him from any obligation to pay them. Earle was liable to the vendors for a breach of his contract to purchase the articles which he had agreed to purchase, and for the damages they had sustained in consequence of his breach of his contract. He was not liable for the notes given by him as the purchase price of the property, the consideration for which was to be the title to the property. The case of Brewer v. Ford, 54 Hun, 116, 7 N.Y. Supp. 244, does not at all conflict with this view. All that was held in that case was that the vendor might retain possession of the property, and at the same time enforce the agreement to pay the purchase price; and the argument of the learned judge writing the prevailing opinion (page 121, 54 Hun, and page 244, 7 N. Y. Supp.) is entirely in line with the view before expressed. If these vendors had simply rested upon the position that, in consequence of the failure of Earle to pay his notes, they were entitled to retake possession of the goods, and hold them as the trustee of the vendee, I can see no reason why they should not have had the right to enforce the notes of the vendee, and to enforce any security that he had given to secure their payment. But when they undertook to treat the property as their own, sell it as their own, and receive the consideration for such new sale, they then elected to treat the contract of sale as broken, and the only right of action remaining to them was an action for damages against the vendee for his breach of the contract. It follows that the Phoenix Furniture Company and the W. & J. Sloane Company have no right to enforce, as against Earle, the notes given as the

contract price of the goods that he had agreed to purchase; and, as the mortgage was given only to secure the payment of those notes, the defendant Robinson has no right to enforce that mortgage for the purpose of paying those notes. Judgment is therefore directed for the plaintiff, with costs.